**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

_____

**PLUMBERS AND STEAMFITTERS LOCAL 118 PENSION FUND,**
**PLUMBERS LOCAL 118 TRAINING FUND,**
**and JOSHUA BIRONG (in his capacity as Trustee),**

          **Plaintiffs,**

  **v.**                                             **Case No. 25-cv-744**

**MECHANICAL MASTERS, INC.,**

          **Defendant.**

_____

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

_____

Plaintiffs by their attorneys, The Previant Law Firm, S.C., submit this Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment.

## I.     Introduction

This case involves the enforcement of Mechanical Masters, Inc.'s ("Mechanical Masters") obligation to remit contributions to the Plaintiff Funds pursuant to collective bargaining agreements, as identified by the audit conducted on Plaintiffs' behalf for the period of January 1, 2023, through November 30, 2024. Plaintiffs submit that there are no material facts in dispute and that the Funds are entitled to judgment as a matter of law against Defendant.

Plaintiffs have produced evidence demonstrating that Mechanical Masters is bound to the collective bargaining agreements between the Plumbers and Steamfitters Local Union #118 of the Plumbing and Pipefitting Industry of the United States and

Canada ("Union") and the Mechanical Contractors, S E, Inc. ("Association") (collective bargaining agreements hereinafter referred to as the "CBAs") effective during the period January 1, 2023 through November 30, 2024. Because Mechanical Masters is bound to the Labor Agreements, it must remit contributions to the Plaintiff Funds for all work covered by the Labor Agreements. The audits conducted on behalf of the Plaintiff Funds revealed unpaid contributions owed by Mechanical Masters for work covered by the Labor Agreements. Based on those unpaid contributions, and pursuant to the Labor Agreements, Plaintiffs calculated interest and liquidated damages assessed against Mechanical Masters, which are also included in Plaintiffs' audit reports. To date, Mechanical Masters has made no payments toward contributions, interest, or liquidated damages owed for covered work performed between January 1, 2023 and November 30, 2024.

## II.     Facts

### a. Obligations Under the CBAs.

In June of 2007, Mechanical Contractors became bound to the terms of the Labor Agreement between the Union and the Association effective June 1, 2007 through May 31, 2013 ("CBA 1") by signing the same with the Union. *Proposed Findings of Fact in Support of Plaintiffs' Motion for Summary Judgment* ("PFOF"), ¶8. By signing CBA 1, Mechanical Masters adopted and incorporated the trust agreements and other governing documents of the Plaintiff Funds, Plumbers and Steamfitters Local 118 Pension Fund (the "Pension Fund"), and Plumbers Local 118 Training Fund (the "Training Fund") (together the "Funds"). *Id.*, ¶11. CBA 1 expired on May 31, 2013. *Id.*, ¶9. The Union and the Association have negotiated two successor agreements to CBA

2

relevant to this lawsuit: 1) the Labor Agreement effective from June 12, 2017 through May 31, 2023 ("CBA 2"); and 2) the Labor Agreement effective June 1, 2023 through May 31, 2025 ("CBA 3") ( CBA 1, CBA 2, and CBA 3 are hereafter referred to as the "CBAs"). *Id.*, ¶10.

Contractors bound to the CBAs are required to remit contributions to the Funds for each hour of covered work performed by their employees regardless of whether those employees are members of the Union. *Id.*, ¶12. The term "covered work" includes the performance of tasks related to plumbing, heating, and piping work performed within the geographic jurisdiction of the Union. *Id.,* ¶13. Appendix A of the CBAs itemizes specific tasks considered covered work. *Id.,* ¶14. The hourly rate for contributions owed to the Funds is set pursuant to the CBAs. *Id.*, ¶16. Contributions rates for the Funds generally change annually, becoming effective June 1st of a given year. *Id.*, ¶17. All payments made to the Funds for employees covered by the CBAs, while the CBAs are in effect, are deemed to be paid pursuant to the CBAs. *Id.*, ¶15.

Members of the Union, not to be confused with signatory contractors, are required to pay working dues for each hour of covered work they perform. *Id.*, ¶18. Like contribution rates owed to the Funds, the rate of working dues is set by the CBAs and may change annually. *Id.*, ¶20. Members can request that their employer deduct their working dues from their wages and pass along the same to the Union. *Id.*, ¶21. First and Second-year Apprentices are required to pay 60% of the Journeymen rate for working dues, whereas Third, Fourth, and Fifth-year Apprentices must pay 75%.

Contributions to the Funds, and working dues to the Union, are to be paid by the 15th day of the month after which the work was performed. *Id.*, ¶25. If an employer fails

3

to pay contributions when due, the Funds will assess liquidated damages at 5% of unpaid or delinquent contributions. *Id.*, ¶26. The Funds will additionally assess interest, at a rate of 1.5% per month, per month on any unpaid contributions until those contributions are paid. *Id.*, ¶27.

### b. Mechanical Masters' Conduct in Accordance with the CBAs.

Since 2007, Mechanical Masters has only signed CBA 1. *Id.*, ¶8. Even though CBA 1 expired May 31, 2013, Mechanical Masters has abided by the terms of subsequent CBAs, pertinently, CBA 2 and CBA 3, by paying contributions to the Funds and working dues to the Union for work performed by its employees. As is required of a signatory contractor, Mechanical Masters paid monthly contributions to the Pension Fund consistently between December 2022 and April 2024, *Id.*, ¶45., paid monthly contributions to the Training Fund consistency between January 2023 and April 2025, and pass along working dues to the Union consistently between January 2023 and November 2024 as authorized by the Union's Authorization for Dues Check-Off Forms executed by the company's Union-member employees. *Id.*, ¶¶46,50,53. When Mechanical Masters paid contributions to the Funds, or passed along working dues to the Union, it did so at the appropriate rates for a given work month consistent with the effective wage rates pursuant to CBA 2 and CBA 3. *Id.*, ¶¶48,51,54.

### c. Audit Findings

On December 27, 2024, Randy Rosenmerkel, an auditor for Combined Crafts Statewide Audit Program, conducted an audit of Mechanical Masters' books and records for the period January 1, 2023 through November 30, 2024 on behalf of the Funds. *Id.*, ¶28. Rosenmerkel was unable to review all requested records, as

Mechanical Masters only provided records for employees the company identified as Plumbers and refused Rosenmerkel's request for records related to employees the company identified as non-Plumbers (hereafter, individuals that Mechanical Masters identified as Plumbers will be referred to as "Plumbers" and individuals Mechanical Masters identified as non-Plumbers will be referred to as "non-Plumbers"). *Id.*, ¶31.

Rosenmerkel's audit of records related to Plumbers revealed covered work performed for which Mechanical Masters failed to pay contributions to the Funds. *Id.*, ¶35. Rosenmerkel calculated contributions owed to the Funds based on the number of hours worked by the Plumbers and the wage rates set by the Union and the Association. *Id.* Because Mechanical Masters owed delinquent contributions to the Funds, Rosenmerkel assessed interest on those delinquent contributions at a rate of 1.5% per month delinquent, and liquidated damages at a flat rate of 5%, as authorized by CBA 2 and CBA 3. *Id.*, ¶¶36,37. Accordingly, Rosenmerkel's review of Mechanical Masters' books and records related to Plumbers for the period January 1, 2023 through November 30, 2024 revealed the following contributions, interest, and liquidated damages owed to the Funds:

**Audit Billing for the Period January 1, 2023 through November 30, 2024:**

Pension Fund

| Cont. | Int. | Liq. Dmgs. | Total |
|---|---|---|---|
| $19,581.71 | $656.49 | $817.24 | $21,055.44 |

Training Fund

| Cont. | Int. | Liq. Dmgs. | Total |
|---|---|---|---|
| $3,711.89 | $128.62 | $160.11 | $4,000.62 |

Because Mechanical Masters refused Rosenmerkel access to certain records related to non-Plumbers, Rosenmerkel took each non-Plumbers' quarterly wages, divided by the Local 118 Union's hourly wage rate, and then divided by three to calculate each non-Plumber's monthly hours. *Id.*, ¶32. Rosenmerkel assumed such hours were spent performing covered work as the company's refusal to provide records left him with no other option. *Id.* Based on the estimated hours for non-Plumbers, Rosenmerkel created a Supplemental Audit Billing. *Id.*, ¶33. On May 6, 2026, Rosenmerkel revised the Supplemental Audit Billing based on the testimony of William Shenkenberg, owner of Mechanical Masters, who provided clarification on the percent of time each non-Plumber performed covered work between January 1, 2023 and November 30, 2024. *Id.*, ¶34. Based on the limited records provided by Mechanical Masters related to non-Plumbers, his estimation of hours worked, and the testimony of William Shenkenberg, Rosenmerkel calculated unpaid contributions for the audit period and assessed interest and liquidated damages accordingly:

**Supplemental Audit Billing for the Period January 1, 2023 through November 30, 2024:**

Pension Fund

| Cont. | Int. | Liq. Dmgs. | Total |
|---|---|---|---|
| $69,514.75 | $12,667.23 | $3,475.75 | $85,657.73 |

Training Fund

| Cont. | Int. | Liq. Dmgs. | Total |
|---|---|---|---|
| $11,619.42 | $2,061.91 | $580.98 | $14,262.31 |

*Id.*, ¶¶38,39,40.

Mechanical Masters has not made any payments to the Funds toward the delinquencies owed pursuant to either audit billing for the period January 1, 2023 through November 30, 2024. *Id.,* ¶¶41,43. Accordingly, the delinquent contributions, interest, and liquidated damages calculated by Rosenmerkel remain owed. *Id.*, ¶¶42, 44.

### III.    Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Squibb v. Mem'l Med. Ctr.,* 497 F.3d 775, 780 (7th Cir. 2007) (*citing* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). When deciding a motion for summary judgment the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp*., 24 F.3d 918, 920 (7th Cir. 1994). In ruling on a motion for summary judgement, the non-moving party is entitled to reasonable inferences but not every conceivable inference. *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994).

### IV.    Argument

a. **By Its Conduct, Mechanical Masters Adopted the Terms and Conditions of the CBAs Effective Between January 1, 2023 and November 30, 2024.**

It is well settled that an employer, by its conduct, can adopt the terms and conditions of a labor agreement regardless of whether the employer ever signed the same. *Bricklayers Local 21 of Ill. Apprenticeship and Training Program v. Banner*

7

*Restoration, Inc.*, 385 F.3d 761, 766 (7th Cir. 2004); *Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370, 373 (7th Cir. 1985). This remains true where an employer claims it was not their intent to be bound to the labor agreement in question. *Robbins v. Lynch*, 836 F.2d 330, 332 (7th Cir. 1988) ("[U]ndisclosed intent is not material…Intent is a conclusion rather than a fact."). Conduct manifesting an intent to be bound includes: 1) payment of fringe benefits contributions; 2) payment of increased fringe benefit rates; 3) payment of working dues; and 4) the existence of a prior labor agreement. *Banner Restoration*, 385 F.3d at 766. Because Mechanical Masters conducted itself as a signatory contractor, it is bound to CBA 2 and CBA 3 even though it never signed either agreement.

An employer that pays fringe benefit contributions at the rates set by a labor agreement shows an intent to be bound. *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Const. Corp.*, 258 F.3d 645, 649-50 (7th Cir.2001). Doubly so for an employer that pays increased rates when the labor agreement calls for it without a second thought. *Id.* In *Gustafson*, an employer signed to a labor agreement that expired in 1993 continued to pay fringe benefit contributions through 1998 at the rates set by subsequent labor agreements. *Id.* at 648. The company, not only continued to pay contributions, but paid contributions at higher rates, between 1993 and 1998 "without a murmur." *Id.* at 649. The Seventh Circuit held that the employer, by its conduct, was bound by the subsequent labor agreements given its voluntary payment of scale contribution rates. *Id.* at 650.

"Checkoffs of dues… depend on the existence of a *real* agreement with a union." *U.S. Can Co. v. N.L.R.B.*, 984 F.2d 864, 869 (7th Cir. 1993). Without a labor agreement,

8

the checkoff of working dues from employee wages is illegal. *See Line Constr. Benefit Fund v. Allied Elec. Contractors, Inc.*, 591 F.3d 576, 580 (7th Cir. 2010) ("We note in passing that dues checkoffs are permissible under the National Labor Relations Act only if the employer is bound by a collective bargaining agreement…If Allied was collecting union dues during this time period, that is strong evidence that it was party to the CBA. Without a CBA, such collections are illegal."). In *U.S. Can Co.*, the employer, after acquiring a business signed to a labor agreement, claimed it had not assented to the labor agreement in question, and only deducted working dues from its employees' wages to "keep union officials happy" as its predecessor had. 984 F.2d at 869. The Court was unconvinced, warning the employer that, if there was no labor agreement, and the company deducted working dues from its employees' paychecks, that would be a prohibitive transaction under 29 U.S.C. § 186(c)(4) in subversion of 29 U.S.C. § 186(a)(2). *Id.* The Court ultimately upheld the National Labor Relations Board's finding that the company was bond to the labor agreement in question. 984 F.2d at 870.

By its conduct, Mechanical Masters assented to the provisions of the CBAs covering the period January 1, 2023 through November 30, 2024. As was the case in *Gustafson*, Mechanical Masters consistently paid contributions to the Funds at the rates prescribed by the CBAs and they paid proper rates to the Funds as rates increased pursuant to the CBAs. 258 F.3d at 648. Mechanical Masters even paid differing rates to the Pension Fund for those employees it identified as apprentices, according to the wage rates of CBAs. These are not the actions of a company thought to be a non-signatory contractor, these are the actions of a company that acquiesced to two labor agreements by its conduct.

9

Without the CBAs, Mechanical Masters would find itself in the same quandary as the employer in *U.S. Can Co.*, 984 F.2d at 869. Mechanical Masters consistently passed along working dues to the Union throughout the audit period at the rates set by the CBAs. If Mechanical Masters was not bound to the agreements, those actions would be illegal under 29 U.S.C. § 186(c)(4). Rather, as a signatory contractor, Mechanical Masters paid working dues pursuant to the Union's Authorization for Dues Check-Off Form signed by its employees.

Regardless of any undisclosed intent from Mechanical Masters, the conclusion here, based on the company's conduct, is that it is bound to the terms and conditions of CBA 2 and CBA 3. The Court should hold the same.

### b. ERISA §§ 502(G)(2) and 515 Mandate the Award of Contributions, Liquidated Damages, Interest, Attorney Fees and Costs as a Matter of Law if There are Unpaid Contributions at the Time of Suit.

This litigation is governed by two provisions of ERISA, the federal law governing employee benefit plans. First, ERISA § 515 (29 U.S.C. § 1145) creates a federal statutory obligation to make contributions in accordance with the terms of any collectively bargained agreement in which an employer participates. Secondly, ERISA § 502(g)(2) (29 U.S.C. § 1132(g)(2)) prescribes the precise remedy for the violation of section 515. Section 515 was created in 1980 and section 502(g)(2) was then amended as part of the overall congressional plan to create strong incentives for employers to make timely payments to benefit plans. *Central States Pension Fund v. Gerber Truck Service*, 870 F.2d 1148, 1156 (7th Cir. 1989) (referring to the congressional scheme as "pay-now-argue-later").

ERISA § 515 states:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.[1]

ERISA § 502(g)(2) as amended states:

In any action under this title [i.e., Title I of ERISA] by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of a plan is awarded, the court shall award the plan--

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of--

(I) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorneys fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate. For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan or if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1954.[2]

Section 502(g)(2) thus provides that an employer must pay their contributions and either double interest or interest plus liquidated damages provided for under the

---

[1] 29 U.S.C. § 1145.

[2] 29 U.S.C. § 1132(g)(2).

plan, plus attorney fees. *Central States Pension Fund v. Sloan*, 714 F.Supp. 943, 949 (N.D. Ill. 1989). The Funds have adopted a five percent (5%) provision for liquidated damages and have designated in appropriate documents an interest rate of one and one-half percent (1.5%) per month. The Court must order the appropriate interest plus 5% liquidated damages if it finds that there are delinquent contributions in this case. *Id.*

In this case, therefore, if Mechanical Masters was delinquent at the time the suit was filed, the Court must order the full range of statutory relief available under ERISA § 502(g)(2). As evidenced by the affidavits and exhibits filed with the Court in conjunction with this brief, the contributions, liquidated damages and interest owed to Funds are $124,976.10. Meanwhile, attorneys fees and costs expended by the Plaintiff Funds in their efforts to collect amounts from Mechanical Masters total $7,987.50. The Plaintiffs are entitled to judgment against Mechanical Masters in the amount of $132,963.60.

### c. Mechanical Masters Owes the Funds Contributions, Liquidated Damages, Interest, Attorney Fees and Costs as Mandated by the Statute.

Mechanical Masters has not presented any evidence that the audit discoveries were incorrect. Revisions to the Supplemental Audit Billing have already been addressed based on the testimony of the company's owner. The delinquencies arise because of Mechanical Masters' failure to make contributions to the Funds in accordance with the CBAs. This is a strict violation of ERISA § 515. At all times material, Mechanical Masters has owed contributions to the Funds.

The Funds delinquency numbers were the result of a self-reporting system. The employer reports to the Funds on a monthly basis the employer's reckoning of the amount it owes in contributions, based upon the number of employees, the hours they have worked, and the hourly contribution. Further, the employer's payroll books and

12

records are audited as necessary. In other words, delinquent or omitted contributions are determined by the monthly reports and payroll records provided by Mechanical Masters itself. Such a self-reporting system is reasonable as a matter of law, and funds, such as the Plaintiff Funds here, can adopt it. *Whitworth Brothers Storage v. Central States Pension Fund*, 982 F.2d 1006, 1018 (6th Cir. 1993). An employer is thereby estopped from denying the accuracy of the employer's own reckoning of the delinquency; even if the employer later claims that the reports contain errors of fact or law. *Id.*

Even if the delinquency acknowledged through the self-reporting system were not conclusive upon the employer; however, Mechanical Masters could still not dispute the amount of its delinquency. The burden is not upon the Plaintiffs to establish the amount of the delinquency. *Brick Masons Pension Trust v. Industrial Fence & Supply*, 839 F.2d 1333, 1338-39 (9th Cir. 1988); *Combs v. King*, 764 F.2d 818, 825-27 (11th Cir. 1985); *See also, Operating Engineers Local 139 Health Benefit Fund v. CGR Ltd.*, 2007 WL 3273434 at *3 (E.D. Wis. 2007). This rule is merely a species of the generic rule that a wrongdoer bears the risk of the uncertainty of the amount of damage created by his wrong, the fact of damage having been established. *See Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931), quoted in *Industrial Fence & Supply*, 839 F.2d at 1338. The reported delinquencies as set forth in affidavits and exhibits filed with the Court are therefore conclusive upon Mechanical Masters since they are based upon records provided by Mechanical Masters.

The Plaintiff Funds are considered third-party beneficiaries of the CBAs to which Mechanical Masters is bound. The Funds are therefore entitled to receive the benefit of

the written terms of said agreements. *Gerber Truck, supra*, 870 F.2d at 1151*; see also Robbins v. Lynch*, 836 F.2d 330, 333 (7th Cir. 1988). The CBAs, as reflected in the affidavits and exhibits attached herein, clearly set forth Mechanical Masters' obligation to make contributions to the Funds on a timely basis. Further, the Funds are in the same position as a holder in due course in commercial law and therefore are entitled to enforce the CBAs without regard to the understandings or defenses raised by Mechanical Masters. *Gerber Truck, supra*, 870 F.2d at 1149.

Section 502(g)(2) mandates an award of these contributions, interest and liquidated damages, plus costs and attorney fees. *Gerber Truck, supra*, 870 F.2d at 1156 (7th Cir. 1989); *Industrial Fence & Supply, supra*, 839 F.2d at 1339.  Again, to date, contributions, liquidated damages and interest total $124,976.10, while attorneys fees and costs total $7,987.50. Judgment is mandated by ERISA §502(g)(2) in the amount of $132,963.60.

## V.  Conclusion

For the above stated reasons, the Court should find as a matter of law that Mechanical Masters, Inc. is liable for contributions, interest, liquidated damages, and reasonable attorneys' fees and costs owed to the Plaintiff Funds for the period January 1, 2023 through November 30, 2024.

Dated this 12th day of June, 2026.

/s/Alex J. Sterling
Alex J. Sterling (SBN: 1107931)
The Previant Law Firm, S.C.
310 West Wisconsin Avenue
Suite 100MW
Milwaukee, WI 53203
414-271-4500 (Telephone)
414-271-6308 (Fax)
Email: ajs@previant.com
Attorneys for Plaintiffs